**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| In re:<br>    Susan J. Allen,<br>            *Debtor* | Case No.:  22-30067 (AMN)<br>Chapter 7 |
| Kara S Rescia, Chapter 7 Trustee<br>            *Plaintiff*<br>v.<br><br>EasyKnock, Inc. and<br>EK Real Estate Fund I, LLC<br>            *Defendants* | Adv. Pro. No. 24-03002 (AMN)<br><br><br><br><br><br>Re: AP-ECF No. 8, 10[1] |

**MEMORANDUM OF DECISION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS COMPLAINT**

*Appearances*

| | |
|---|---|
| *For the Plaintiff:* | Kara S Rescia, Esq.<br>Paige M. Vaillancourt, Esq.<br>Rescia Law, P.C.<br>5104A Bigelow Commons<br>Enfield, CT 06082 |
| *For the Defendants:* | Kurt A. Mayr, II, Esq.<br>Richard C. Ramirez, Esq.<br>Glenn Agre Bergman & Fuentes LLP<br>1185 Avenue of the Americas<br>New York, NY 10036 |

---

[1]     "ECF No." refers to the document number on the court's electronic case filing docket for the Chapter 7 case.  "AP-ECF No." refers to the document number on the court's electronic case filing docket for the adversary proceeding case.

I.    **INTRODUCTION**

This case is about a residential real estate sale-leaseback transaction among Susan J. Allen ("Debtor"), EasyKnock, Inc. ("EasyKnock") and EK Real Estate Fund I, LLC ("EK Real Estate").  In February 2020, the Debtor apparently sold her real property known as 57 Broadview Terrace, Meriden, Connecticut ("Property") to defendant EK Real Estate in exchange for cash, a conditional option to repurchase the Property, and other consideration.  As part of the deal, the Debtor remained living at the Property and started paying rent to EK Real Estate.  Less than two years later, in February 2022, Ms. Allen filed the underlying Chapter 7 bankruptcy case here, case number 22-30067 ("Main Case").

Kara Rescia, the Chapter 7 Trustee appointed in the Main Case ("Trustee" or "plaintiff"), initiated this adversary proceeding, claiming the substance of the sale-leaseback transaction amounts to an avoidable fraudulent transfer pursuant to 11 U.S.C. § 548.[2]  She also alleges the defendants violated the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42-110a, *et seq.* ("CUTPA").  The Trustee seeks an order avoiding and setting aside the sale pursuant to her avoidance power under Bankruptcy Code § 548, as well as money damages, attorney's fees, and punitive damages under CUTPA.

The defendants now move for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), made applicable here through Fed.R.Bankr.P. 7012.

---

[2]    Title 11, United States Code, is the "Bankruptcy Code."  References to statutory sections are to the Bankruptcy Code unless otherwise specified.

## II.    <u>JURISDICTION</u>

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This matter includes core and non-core proceedings.  The core proceedings are brought pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), (B) (allowance or disallowance of claims against the estate), (H) (proceedings to determine, avoid, or recover fraudulent conveyances), and (O) (other proceedings affecting the liquidation of the assets of the estate).  The non-core proceedings concern the Trustee's state law claims.

This Memorandum of Decision and Order constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Trustee consents to entry of final orders and judgments by the bankruptcy court, while the defendants do not consent to the entry of final judgment on the state law claims.  AP-ECF No. 10, p. 18; AP-ECF No. 9, p. 30.  Because the Motion will be denied, this Memorandum of Decision and Order is not a final order.

## III.    <u>BACKGROUND</u>

On February 11, 2022 (the "Petition Date"), the Debtor commenced the Main Case by filing a voluntary Chapter 7 bankruptcy petition.  ECF No. 1.  The Trustee filed a complaint commencing this adversary proceeding against the defendants[3] on January

---

[3]    The Trustee contends EK Real Estate Fund, I, LLC and EasyKnock, Inc. are used interchangeably throughout the defendants' agreements with the Debtor.

25, 2024.  AP-ECF No. 1.  As relevant here, February 11, 2020, was two years prior to the Petition Date.  *See,* 11 U.S.C. § 548(a)(1)(B)(i).

The court assumes familiarity with the allegations in the Trustee's Amended Complaint filed as AP-ECF No. 10 ("Complaint" or "Compl.").  The court takes the facts as stated in the Complaint and corresponding exhibits as true for purposes of this ruling.

### A. Facts Alleged in the Complaint

While the operative Complaint was filed after the defendants filed their Motion to Dismiss (the "Motion"), the parties agree the Motion continues to apply.  *See,* AP-ECF No. 24, p. 5.  The following is an abbreviated recitation of the allegations most pertinent to the court's determination.

Briefly, the Complaint alleges defendant EasyKnock operates a company that advertises a variety of sale-leaseback products on its website and through web-based advertisements which purport to offer consumers debt relief solutions.  Compl. ¶ 14.  The defendants target consumers seeking home equity loans and advertise their products as an alternative to home equity loans that do not require a minimum credit score.  Compl. ¶ 15.  The Trustee alleges the defendants' advertisements and website misrepresent the amount of actual cash and value a consumer will receive through a transaction.  Compl. ¶ 15.

During the two years before the Petition Date, the Debtor conveyed the Property by warranty deed to EK Real Estate for less than reasonably equivalent value (the "Transfer").  Compl. ¶ 13.  The Debtor was the sole owner of the Property prior to the Transfer.  Compl. ¶ 12.  As part of the transaction, the Debtor entered a contract with defendant EK Real Estate for a product called a "Sell and Stay".  Compl. ¶ 17.  Attached to the Complaint as Exhibit A are purported copies of:

4

- A Sell and Stay Contract Summary (the "Contract") with a Residential Real Estate Sales Agreement, to govern the terms and conditions of the Transfer (the "Transfer Agreement");

- A Residential Real Estate Option Agreement, to govern an Option and Option Exercise Prices, as defined and discussed infra (the "Option Agreement");

- A Sell and Stay Lease Agreement, to govern the terms and conditions of the Debtor's leaseback (the "Lease").
Compl. ¶ 17.

Attached to the Complaint as Exhibit B is a purported copy of an addendum (the "Addendum") dated February 27, 2020. Compl. ¶ 19; p. 127. Also attached is Exhibit C, a purported copy of the closing statement, and Exhibit D, a purported copy of a historical comparative market analysis. Compl. pp. 129, 131.

Defendant EK Real Estate allegedly purchased the Property for $174,000. Compl. ¶ 19. The Contract states this sum consisted of an option to repurchase or sell the Property valued at $112,000 and cash proceeds of $61,000 plus a $1,000 deposit held in escrow. Compl. ¶ 19. The Addendum amended the consideration to consist of an $85,000 option and cash proceeds of $88,000, with no deposit. Compl. ¶ 19. The Trustee alleges the fair market value of the property was $200,000 at the time of the Transfer. Compl. ¶ 20.

The defendants provided little benefit to the Debtor as consideration for the Transfer. Compl. ¶ 52. In exchange for the transfer of title to the Property, the Debtor received $51,533.39 in cash. Compl. ¶ 25. The purchaser retained $12,850.90 in the form of rent holdbacks and credits and paid $6,328.78 for real property taxes. Compl. ¶¶ 24, 26. The total of cash paid to the Debtor, cash paid to satisfy real property taxes then due, and rent holdbacks or credits was $70,713.07. Compl. ¶ 27. The defendants charged the Debtor $7,000 for "repairs for health, fire, and safety reasons," but the repairs

were not performed until after the Petition Date.  Compl. ¶ 29.  The defendants also charged the Debtor $5,610 as a closing cost credit and $4,350 for a processing fee, for a total of $9,960 in closing costs.  Compl. ¶ 30.  The $9,960 of closing costs charged to the Debtor exceeded the actual cost of these items and included costs of the defendants that provided no benefit to the Debtor.  Compl. ¶ 30.

The defendants valued the Option Agreement at $85,000, but the Trustee sees no support for this valuation, as it is not the Option Exercise Price (as defined in the Complaint), and the Option Agreement provides no or only nominal value to the Debtor. Compl. ¶¶ 31-34, 42.  The Contract prohibits the recording of the Option Agreement without written consent of the defendants, which deprives the Debtor from holding any recorded interest in the Property.  Compl. ¶ 43.  The Lease and Option Agreement subordinate the Debtor's leasehold interest and the Option Agreement to any encumbrance placed on the Property.  Compl. ¶ 45.  The Lease is predatory and doubles the Debtor's actual monthly rent payments after the first year.  Compl. ¶¶ 46-48.

At the time of the Transfer the Debtor owed approximately $85,000 in general unsecured debt, and approximately $10,000 of secured debt, as well as contingent, unknown liabilities of more than $30,000.  Compl. ¶ 54.  At the time of the Transfer, the Debtor had unreasonably small capital and nominal assets aside from the Property and was unable to pay her debts as they became due; after the transfer, the Debtor continued to be unable to pay her debts as they came due.  Compl. ¶¶ 55-57.  The Transfer of the Property rendered the Debtor insolvent.  Compl. ¶ 53.

At the time of the Transfer the Debtor is alleged to have owed only real property taxes on the Property totaling less than $7,000.  Compl. ¶ 24. The Debtor had no mortgage on the Property.  Compl. ¶ 23. To solve that $7,000 real property tax problem,

the Trustee alleges the Debtor sold her house to the defendants pursuant to the various agreements attached to the Complaint.  Compl. ¶ 58.

### B. Relief Sought in Complaint

In Counts I and II, the Trustee seeks to avoid the Transfer pursuant to Bankruptcy Code § 548(a)(1)(B) as a fraudulent transfer.  Compl. pp. 19-20.  In Counts III and IV, the Trustee seeks monetary and punitive damages, alleging the defendants violated the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42-110a, *et seq*. ("CUTPA"). Compl. ¶¶ 100, 112.  In Count V, the Trustee seeks to automatically preserve the Property for the benefit of the bankruptcy estate pursuant to Bankruptcy Code §§ 544, 548, and 550(a).  Compl. ¶ 114.  Finally, in Count VI, the Trustee seeks to set aside, avoid, and recover the Property or its value.  Compl. ¶ 116.

### C. Motion to Dismiss

The defendants' Motion to Dismiss (the "Motion") seeks to dismiss all Counts of the Complaint.  AP-ECF No. 8.  The defendants argue none of the Trustee's claims are plausible as a matter of law.  AP-ECF No. 9, p. 7.  The defendants also argue the Trustee fails to allege sufficient facts to state a claim for relief pursuant to Fed.R.Civ.P. 12(b)(6), applicable here pursuant to Fed.R.Bankr.P. 7012.  AP-ECF No. 9, p. 16.  According to the defendants, the fraudulent transfer claims, Count I and II, must fail because the Trustee fails to adequately plead essential elements of a fraudulent transfer claim including insolvency and a lack of reasonably equivalent value.  AP-ECF No. 9, p. 17, 20.  The defendants contend the court should dismiss the Trustee's CUTPA claims, Counts III and IV, because they lack sufficient factual assertions of deceptive or unfair trade practices. AP-ECF No. 9, pp. 26-29.  The defendants also seek to dismiss Counts V and VI because they are dependent upon Counts I and II.  AP-ECF No. 9, pp. 29-30.

The Trustee filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss, arguing she sufficiently pleaded facts supporting her legal claims.  *See*, AP-ECF No. 14.

The court held oral argument on the Motion to Dismiss on April 18, 2024.

### D.  Applicable Law

#### 1.  Standard of Review

The defendants bring this Motion to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6), applicable here pursuant to Fed.R.Bankr.P. 7012.  A complaint must contain sufficiently pled facts, accepted as true, to state a facially plausible claim to survive dismissal.  *See, Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717-18 (2d Cir. 2013); Fed.R.Civ.P. 8(a)(2); Fed.R.Bankr.P. 7008.

A pleading which raises nothing more than a suspicion of a legally cognizable right of action is insufficient.  *Lynch v. City of N.Y.*, 952 F.3d 67, 74 (2d Cir. 2020).  Likewise, a formulaic recitation of the elements of a cause of action is not sufficient to survive a motion to dismiss.  *Errato v. Am. Express Co.,* 646 F. Supp. 3d 402, 408 (D. Conn. 2022).

While a complaint need not include detailed factual allegations, it must include more than an unadorned, the-defendant-unlawfully-harmed-me type accusation.  *Pension Benefit Guar. Corp.*, 712 F.3d at 717-18.  A claim has facial plausibility when, construing all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff, the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Lynch*, 952 F.3d at 74; accord, *Errato,* 646 F. Supp. 3d at 408.

8

When considering a motion to dismiss, the court should assess the feasibility of the complaint, not the weight of the evidence.  *Byrne v. Charter Communs., Inc.,* 581 F. Supp. 3d 409, 415 (D. Conn. 2022).  The court may, however, consider other sources in addition to the complaint, including documents incorporated into the complaint by reference.  *Revitalizing Auto Cmtys. Envtl. Response Tr. v. Nat'l Grid USA,* 92 F.4th 415, 436 (2d Cir. 2024).

### 2.  Fraudulent Transfer – 11 U.S.C. § 548

Pursuant to Bankruptcy Code § 548, a bankruptcy Trustee may avoid any transfer of an interest of a debtor in property made within two years before the petition date if the debtor did not receive reasonably equivalent value and was insolvent before or because of the transfer.  11 U.S.C. § 548(a).  A complaint must plausibly allege each of these four elements to survive a motion to dismiss.

### 3.  Reasonably equivalent value

To assess reasonably equivalent value for purposes of Bankruptcy Code § 548(a), a court must determine the value of the consideration exchanged between the parties at the time of the conveyance.  A court need not strive for mathematical precision but must keep the equitable purposes of the statute firmly in mind, recognizing that any significant disparity between the value received and the obligation assumed will have significantly harmed the estate's creditors.  *Kirschner v. Large S'holders (In re Tribune Co. Fraudulent Conveyance Litig.)*, 10 F.4th 147, 172 (2d Cir. 2021).  Courts must examine the totality of circumstances, including the arms-length nature of a transaction and the good faith of a transferee.  *In re: Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th at 172.

Only economic benefits should be considered when determining reasonably equivalent value, and purely "emotional benefits" should not be considered. *Pereira v. Wells Fargo Bank, N.A. (In re Gonzalez)*, 342 B.R. 165, 169 (Bankr. S.D.N.Y. 2006) (citations omitted). The same is true concerning transfers for "ephemeral, intangible and psychological benefits." 5 COLLIER ON BANKRUPTCY ¶ 548.05.

Although determination of reasonably equivalent value is largely fact-based, the complaint must plausibly allege the debtor received less than reasonably equivalent value. *In re Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th at 172-173. There are many different methods of determining value.

### 4.  Options to Purchase Real Property

The defendants argue the Option Agreement (discussed in more detail below), as a matter of law, has a value of over $100,000. AP-ECF No. 9, p. 21-22. To support this argument, the defendants cite *Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102 (9th Cir. 2010), and *Lowe v. B.R.B. Enters., Ltd. (In re Calvillo)*, 263 B.R. 214 (W.D. Tex. 2000), both cases determined upon a fully developed factual record.

In *JTS Corp.*, a corporation sold several real properties to a board member in exchange for cash and an option to repurchase the properties. *In re JTS Corp.*, 617 F.3d at 1107. The board member purchased eight properties for $10 million and granted the corporation an option to repurchase the real property for the same amount within one year, less the greater of $1 million or the rental income generated by the properties for a one-year period. *In re JTS Corp.*, 617 F.3d at 1107. The Circuit Court agreed the bankruptcy court's determination of the value of the option was correct when it credited the board member's expert's opinion that, "the value of the repurchase option was the

difference between the reasonably equivalent value of the property and the fixed strike price." *In re JTS Corp.*, 617 F.3d at 1108-1110.

The Court in *JTS Corp.* relied in part on a decision from the District Court for the Western District of Texas, *In re Calvillo,* that affirmed a Bankruptcy Court grant of summary judgment.   In *Calvillo*, the debtors entered a sale-leaseback agreement concerning their restaurant.   *In re Calvillo*, 263 B.R. at 216.   The debtors sold the restaurant premises and business assets to two corporate entities, who then leased the premises and assets back to the debtors.   *In re Calvillo*, 263 B.R. at 216.   The debtors also received a repurchase option, exercisable at any time during the three-year lease term if there were no defaults under the lease agreement.   *In re Calvillo*, 263 B.R. at 216.   The Bankruptcy Court determined, and the District Court agreed, the repurchase option's value was the fair market value of the property less the option exercise price.   *In re Calvillo*, 263 B.R. at 220.   In determining whether an exchange for reasonably equivalent value occurred, the District Court also considered the "economic benefits" from allowing the debtor's business to stay in operation.   *In re Calvillo*, 263 B.R. at 220.[4]

Both *JTS* and *Calvillo* involved parties engaged in business entering a commercial real estate transaction.   By contrast, here, the Option Agreement is between a homeowner and a real estate enterprise, regarding the homeowner's residence.   The

---

[4]      The defendants also cited *O'Halloran v. Harris Corp (In re Teltronics, Inc.)*, 540 B.R. 481, 486 (Bankr. M.D. Fla. 2015) – a case about a patent portfolio – to support this valuation method.  However, the court in that case did not endorse that valuation method, but rather recognized the Court in *JTS Corp.* and *Calvillo* employed that valuation method.  *In re Teltronics, Inc.*, 540 B.R. 481, 486 ("Moreover, the Plaintiff says . . .  *In re JTS Corp.* and *In re Calvillo* . . . [stand] for the proposition that the proper measure of damages in a fraudulent transfer case involving an option contract is the value of the underlying property less the option price.  All of that is true, but those cases do not dictate that the value of Teltronics' blocking right here is equal to the fair market value of the patent portfolio (less any option price)." (Footnote omitted)).

Trustee contends the case of *Davis v. Suderov (In re Davis)*, 169 B.R. 285 (E.D.N.Y. 1994), affirming a Bankruptcy Court decision after a trial, is more analogous to the matter before the court.

In *Davis*, unsophisticated homeowners, fearing foreclosure, entered into a sale-leaseback agreement for their residence with a "sophisticated and experienced real estate lender." *In re Davis*, 169 B.R. at 287-88. The homeowners were to receive $24,000 for the sale of the home. *In re Davis*, 169 B.R. at 289. However, after paying off the mortgage arrears, deducting expenses and costs that allegedly should have been borne by the buyers, such as their attorney's and broker fees, and questionable payments to the buyers, the homeowners received no cash payment. *In re Davis*, 169 B.R. at 289. The bankruptcy court determined the homeowners did not receive fair consideration for the sale of the house because they were not paid "a penny" for the equity in their home. *In re Davis*, 169 B.R. at 291.

The District Court in *Davis*, on appeal, upheld this determination, holding the homeowners did not receive fair consideration or reasonably equivalent value. *In re Davis*, 169 B.R. at 300. The Court opined the payment by the purchaser of the homeowners' mortgage arrears "were of no benefit to the [homeowners] because they simultaneously lost the title to their home. . .. [T]he ultimate beneficiary of removing these encumbrances on the property was [the purchaser] as the subsequent property owner . . .." *In re Davis*, 169 B.R. at 300.

*Davis* involved a high degree of fraud; the homeowners were unaware they were selling their home and were induced into the transaction by the buyer's misrepresentations. *In re Davis*, 169 B.R. at 291. The purchaser also provided the homeowners with a statement of closing costs and expenses "devoid of reality, fraudulent

in nature, and aimed at suiting the needs of the [purchaser] by showing that more was paid for the property than what was actually paid." *In re Davis*, 169 B.R. at 300. The Court held the transaction cost the homeowners money and was "a total sham." *In re Davis*, 169 B.R. at 300.

Other decisions and statutes may be relevant to determine the value, scope, and enforceability of an unrecorded option to purchase real property. Some courts have found an option has no value where it cannot be transferred for value to a third party. *See, Staats v. Butterworth Props. (In re Humble)*, 19 F. App'x 198, 199 (6th Cir. 2001) (unpublished). The Connecticut Supreme Court held, "an option contract conveys no property interest to an optionee." *New Eng. Estates, LLC v. Town of Branford*, 294 Conn. 817, 835, (2010). In Connecticut, for a lease exceeding one year in term that includes an option to purchase real property to be effective against any person other than the lessor, lessee and their respective heirs, successors,[5] administrators and executors, a notice of lease must be recorded on the land records. Conn.Gen.Stat. § 47-19. *Bona fide* purchasers without actual notice are not bound by unrecorded leases or option agreements. *See, Drazen Props. Ltd. P'ship*, 19 Conn. App at 477.

### 5. Insolvency

The Bankruptcy Code defines "insolvent" as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of . . . property transferred, concealed, or removed with intent to hinder, delay,

---

[5]     The Connecticut Appellate Court has determined the term "successors" as used in Conn.Gen.Stat. § 47-19 refers to those who take the property by inheritance. *Drazen Properties Ltd. P'ship v. E.F. Mahon, Inc.*, 19 Conn. App. 471, 475-76, (1989); accord, *Taom Heritage New Haven, LLC v. Fuun House Prods., LLC*, No. NHHCV186008208, 2019 WL 2602021, at *4 (Conn. Super. Ct. Feb. 14, 2019).

or defraud such entity's creditors; and . . . property that may be exempted from property of the estate under section 522 of this title . . .."  11 U.S.C. § 101(32).  Courts determine insolvency by applying the "balance sheet test"; simply put, if a debtor has greater debts than assets, the debtor is insolvent.  *Universal Church v. Geltzer*, 463 F.3d 218, 226 (2d Cir. 2006).  If a complaint sets forth allegations that a debtor's assets were less than its liabilities, the plaintiff has sufficiently plead insolvency.  *See, e.g., In re Vivaro Corp.*, 524 B.R. 536, 553 (Bankr. S.D.N.Y. 2015).

### 6.  Connecticut Unfair Trade Practices Act

It is a violation of the Connecticut Unfair Trade Practices Act, or CUTPA, for any person to engage in "unfair methods of competition" or "unfair or deceptive acts and practices" while doing business.  Conn.Gen.Stat. § 42-110b(a).  CUTPA provides a right of action for any person who suffers any "ascertainable loss" because of a CUTPA violation.  *Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co.*, 905 F.3d 84, 95 (2d Cir. 2018) (citing Conn.Gen.Stat. § 42-110g(a)).  An ascertainable loss is a loss that is "capable of being discovered, observed, or established.  *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189-90 (2d Cir. 2020) (citations omitted; internal quotation marks omitted).  The ascertainable loss requirement acts as a threshold barrier to CUTPA claims.  *Dane*, 974 F.3d at 190.

Claims under CUTPA may result from either unfair practices, meaning practices amounting to a violation of public policy, or actually deceptive practices.  *Langan v. Johnson & Johnson Consumer Cos.*, 95 F. Supp. 3d 284, 288 (D. Conn. 2015); accord, *Ulbrich v. Groth*, 310 Conn. 375, 409 (2013).

14

An act or practice is deceptive under CUTPA when there is:

(1) a representation, omission, or other practice likely to mislead consumers;
(2) the consumer interprets the message reasonably under the circumstances; and
(3) the misleading representation, omission, or practice is material – that is, likely to affect consumer decisions or conduct.
*Langan,* 95 F. Supp. 3d at 288 (cleaned up).

To determine whether an act or practice is unfair under CUTPA, Connecticut courts look

to the following factors:

(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;
(2) whether it is immoral, unethical, oppressive, or unscrupulous;
(3) whether it causes substantial injury to consumers, competitors, or other businesspersons.
*Langan*, 95 F. Supp. 3d at 288 (cleaned up).

Whether a practice is unfair or deceptive is a question of fact. *Langan*, 95 F. Supp.

3d at 288-89. "However, the court may decide it as a matter of law if it is clear that no

reasonable person would be deceived by defendant's conduct." *Smith v. Wells Fargo

Bank, N.A.*, 158 F. Supp. 3d, 91, 101 (D. Conn. 2016), *aff'd* 666 F. App'x 84 (2d Cir.

2016). "CUTPA does not require proof of intent to induce reliance." *Id.*

Punitive damages may be awardable pursuant to CUTPA. Punitive damages are

warranted only where the evidence reveals "a reckless indifference to the rights of others

or an intentional and wanton violation of those rights." *Hernandez v. Saybrook Buick

GMC, Inc.*, 505 F. Supp. 3d 93, 114 (D. Conn. 2020); accord, *Larobina v. Home Depot,

USA, Inc.*, 76 Conn. App. 586, 597-98 (2003).

## IV.    DISCUSSION

The court's task at this Rule 12(b)(6) stage is to determine whether the plaintiff sufficiently alleges facts that plausibly establish grounds for relief.

### A.    The Trustee Sufficiently States a Claim for Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B)

To survive dismissal of Counts I and II, the Trustee must allege that an interest of the Debtor was transferred within the two years before the Petition Date, the Debtor received less than reasonably equivalent value in exchange for the transfer, and the transfer was made at a time the Debtor was insolvent or she became insolvent because of the transfer.  Here, the Trustee sufficiently alleges facts, assumed as true for purposes of this decision, that plausibly establish grounds for relief under Bankruptcy Code § 548 on Counts I and II.

#### 1.    Transfer of a Property Interest Within Two Years Before Petition Date

First, the Trustee alleges that an interest of the Debtor in the Property was transferred within two years before the Petition Date, or on or after February 11, 2020. Compl. ¶ 13.  This element appears undisputed.

#### 2.    Transfer for Less than Reasonably Equivalent Value

Next, the Trustee sufficiently alleges the Debtor received less than reasonably equivalent value in exchange for the transfer of the Property.  Compl. ¶¶ 20-30, 42.  Courts look to the totality of circumstances in determining whether reasonably equivalent value was exchanged.  The Trustee contends reasonably equivalent value was not exchanged because the Property was undervalued at the closing, the "cash" value the Debtor received was artificially inflated, and the Option Agreement was valueless.    The

16

defendants argue the Trustee fails to allege facts showing the consideration paid to the Debtor was less than reasonably equivalent to the Property's value.  The court disagrees.

The Trustee alleges the defendants, even by their own accounting, undervalued the property by $26,000 at closing.  Compl. ¶ 20.  The Trustee alleges, and the closing statement purports to show, that EK Real Estate claims to have purchased the Property for the sum of $174,000 while the Complaint alleges, and a historical comparative market analysis attached to the Complaint purports to show, the Property was valued at $200,000 at the time of the Transfer.  Compl. ¶¶ 19, 20, Ex. D.  This discrepancy alone is sufficient to plausibly allege the Debtor received less than reasonably equivalent value at the time of the Transfer.

The Trustee goes further, alleging that several line items on the closing statement did not offer value and should be deducted from the $174,000 allegedly provided to the Debtor as consideration.  According to the Complaint, the defendants informed the Debtor that she was to receive $88,000 in cash, and an $85,000 option as consideration for the Transfer.  Compl. ¶ 19.  The Trustee alleges both figures were inflated.

The Trustee alleges the $88,000 "cash" value offered at closing, consisted of cash, the payment of real property taxes, money to be spent by the purchaser on necessary improvements, credits for the Debtor's post-transfer rent for the Property, and closing costs and fees normally borne by a buyer (*i.e.,* for the origination of the buyer's mortgage loan).  Compl. ¶¶ 19, 24, 25, 26, 27, 29, 30.  The Trustee alleges the "cash" value received by the Debtor was only $70,713.07, and credits only the cash, rent holdbacks and credits, and payment to the Meriden Tax Collector. [6]  Compl. ¶ 27.  The Trustee disputes the

---

[6]    The Trustee alleges the Debtor received $51,533.39 in cash, $12,850.90 in rent holdbacks and credits, and the value of $6,328.78 paid to the City of Meriden Tax Collector.  Compl. ¶¶ 24, 25, 26.

Debtor received the full value from the repair holdback of $7,000, or the closing cost holdback of $9,960.  Compl. ¶¶ 29-30.  The defendants argue that, as a matter of law, the Debtor received a total of $90,696.05 in "cash" consideration aside from the Option Agreement, crediting the amounts discounted by the Trustee as well as other amounts. AP-ECF No. 9, p. 12.[7]  The amount received in "cash" is a question of fact not fit for determination at this preliminary stage.[8]  This discrepancy also sufficiently alleges a lack of reasonably equivalent value.

The Trustee alleges the $85,000 Option Agreement, by far the largest line item on the closing statement, was illusory and valueless.  Compl. ¶¶ 31, 33, 42.  With no controlling or readily applicable methods of reaching a value determination of the Option Agreement as described here, it would be imprudent to assign a value at this stage of the litigation.  Despite the defendants' arguments that the value of the Option Agreement is an issue of law, the court finds it to be an inherently fact-based question that is ill-suited for disposition through a motion to dismiss.

The court does not find the reasoning in *JTS* and *Calvillo* regarding valuation of an option agreement dispositive here, at this stage of litigation.  Importantly, the option contracts in those cases involved commercial parties and commercial properties while this case involves a layperson contracting with a sophisticated real estate enterprise. *Davis*, while more akin to the matter at hand, is also distinguishable.  In *Davis* the entire transaction was little more than a "sham" involving fraudulent accounting and rampant misrepresentations.  *In re Davis,* 169 B.R. 300.  The court also notes that all these

---

[7]    The defendants included a credit towards city taxes, city mortgage tax, and state deed tax.
[8]    The defendants also argued the Transfer provided other, intangible benefits such as allowing the Debtor to stay in her home.  AP-ECF No. 24, p. 8-9.  However, only economic benefits should be considered for the purposes of a reasonably equivalent value calculation.  *See, In re Gonzalez*, 342 B.R. at 169.

decisions were reached after the court had the benefit of a full factual record; none were disposed of at the preliminary stage the court finds itself at in the present case.

The Trustee's allegations about the Option Agreement's terms raise questions of material fact.  Material questions relevant to a determination of the Option Agreement's value include whether the Option Agreement is unrecorded, is subordinate to all other encumbrances on the Property, requires the defendants' consent to sell or exercise, and has an expiration date.

The Trustee alleges the Debtor is not permitted to record the Option Agreement without the express written consent of the defendant, and it is unclear whether the Lease is recorded.  Compl. p. 108.  The Option Agreement purportedly has a survivability clause that states the Debtor's rights, "shall survive an assignment of the [Lease] or an involuntary transfer of title by [EK Real Estate] . . .."  Compl. p. 108.  It is unclear how such an unrecorded option would be enforceable against a third-party purchaser.  Even the Lease is enforceable against the lessor and lessee, and their respective heirs, successors, administrators, and executors, and not *bona fide* purchasers without notice. Conn.Gen.Stat. § 47-19.

The defendants also allegedly retain the right to freely assign their rights and obligations under the Option Agreement, while the Debtor may only assign it with written consent from the defendants, which may be withheld in their discretion.  Compl. p. 109. The Trustee also alleges the Option Agreement's purported value is illusory because the defendants hold a unilateral right to withhold consent to any exercise of the Option Agreement to purchase the Property that results in a sale to a third party.  Compl. p. 105. The defendants argue the Option Agreement affords the Debtor the opportunity to "capture a substantial portion of any value appreciation after the transaction."  AP-ECF

No. 9, p. 8.   The defendants argued during the April 18th hearing that the Trustee's allegations create an insupportable contradiction; namely, the Property had and continues to have equity although the Trustee alleges the Option Agreement is illusory.   AP-ECF No. 31 at 00:11:25 – 00:12:30.[9]   The court does not find the Trustee's arguments to be contradictory.   The Trustee alleges the Property had and continues to have equity.   The Trustee also alleges that, to recapture this equity the Debtor would have to pay a greater amount than the growth of this equity and would likely have to mortgage the property, rendering the Option Agreement self-defeating.

The Trustee further alleges the Option Agreement has an expiration date, after which the Debtor purportedly loses the ability to exercise the Option Agreement. Compl. p. 105.   The Option Agreement provides the Debtor "is still entitled to receive the Third-Party Purchaser Option Price at such time as the Property is sold by the [defendants] pursuant to such Option Expiration Procedure."   Compl. p. 105.   This procedure does not require the Property to be sold, but rather leaves the sale to the sole discretion of the defendants.   Compl. p. 105-106.   Because the Option Exercise Price increases each year, the defendants could possibly hold the property until the Option Exercise Price was higher than the value of the property and retain all the profits from the sale, leaving the Debtor with nothing under the terms of the Option Agreement.

At this stage it suffices to say that there is a material issue of fact as to the Option Agreement value.   Taking the Trustee's well pleaded facts as true, and affording to them

---

[9]        The court reviewed the audio file of the hearings using VLC Media Player.  All citations to the audio file of a hearing are to the ECF number of the recording and then to the location of the cited audio as follows: AP-ECF No. ___ at hours:minutes:seconds.

all reasonable inferences, the Trustee sufficiently alleges a lack of reasonably equivalent value was exchanged in the Transfer.

### 3. Insolvency

The Trustee sufficiently alleges insolvency.  The Trustee alleges the Debtor had over $125,000 in debt at the time of the Transfer, and only $8,000 in assets aside from the Property.  Compl. ¶ 54-57.  Taking the allegations as true, and accounting for the value the Trustee alleges the Debtor received, the Debtor had approximately $79,000 in assets against $125,000 of debt after the Transfer of the Property.  Compl. ¶¶ 27, 54, 56. Therefore, the Trustee has sufficiently pleaded insolvency under the balance sheet test.

### 4. The Trustee Sufficiently Stated a Claim for Fraudulent Transfer

The Trustee must allege an interest of the Debtor was transferred within two years before the Petition Date, the Debtor received less than reasonably equivalent value in exchange for the transfer, and the Debtor was insolvent at the time of the transfer or became insolvent because of the transfer.  The Trustee does so.  An interest of the Debtor was transferred within two years prior to the Petition Date.  The consideration exchanged is an issue of fact.  The Trustee sufficiently alleges the value received was unreasonably less than what was given.  Finally, the Trustee alleges the Debtor became insolvent because of the Transfer.  The defendants' arguments regarding the proper valuation of the consideration for the Transfer are not ripe for consideration at this preliminary stage. Taking well pleaded facts as true and resolving inferences in favor of the non-moving party, the Trustee has adequately plead facts sufficient to survive the defendants' Motion as to Counts I and II.

**B. <u>The Trustee Sufficiently States a Claim under Counts V, Automatic Preservation of Avoided Transfers Pursuant to 11 U.S.C. § 551, and Count VI, Liability of Transferee of Avoided Transfers pursuant to 11 U.S.C. § 550(a)</u>**

Counts V and VI, will not be dismissed because both parties agree the disposition of these claims is dependent on the disposition of Counts I and II.  AP-ECF No. 9, pp. 29-30; AP-ECF No. 14, p. 26.

### C. **The Trustee Sufficiently States a Claim Under the Connecticut Unfair Trade Practices Act**

The Trustee alleges facts that plausibly establish grounds for relief under CUTPA. In Count III and Count IV the Trustee must allege the Debtor, or here the estate, suffered an ascertainable loss caused by a deceptive or unfair practice.

The Trustee sufficiently alleges each element.  The Trustee alleges the defendants misrepresented the amount of actual cash and value the Debtor would receive through the Contract.  Compl. ¶ 15.  The Trustee alleges the Debtor overpaid closing costs and did not receive the full value in exchange for repair holdbacks because of the defendants' conduct and the Transfer.  Compl. ¶¶ 29-30.  The Trustee alleges the Contract caused the Debtor to lose some of the equity in her home in exchange for nothing of value. Compl. ¶ 42.  These allegations are sufficient at this stage to meet the pleading requirement for an ascertainable loss.

The Trustee also sufficiently alleges a deceptive practice.  To sufficiently plead a deceptive practice under CUTPA, the claimant must allege a representation, omission, or other practice likely to mislead consumers was reasonably interpreted by the consumer and was material.  *Langan*, 95 F. Supp. 3d at 288.  Here, defendants' practices were allegedly deceptive because they misrepresented the amount of cash and value a consumer would receive for their real property and advertised the sale-leaseback agreements as alternatives to home equity loans while not being loans themselves. Compl. ¶¶ 14-15.  It may be inferred from the Complaint that the Debtor reasonably relied

on the misleading representations concerning the amount of cash to be received and that the sale-leaseback would lead to debt relief. *See,* Compl. ¶¶ 14-15. Such misrepresentations may be inferred to be material because they may have affected the Debtor's decisions or conduct and induced her to enter the Contract. *See,* Compl. ¶¶ 14-16.

Finally, the Trustee sufficiently alleges the defendants' practices are unfair under CUTPA. An act or practice is unfair where the practice offends public policy, is immoral, unethical, oppressive, or unscrupulous, and results in substantial injury. *Langan*, 95 F. Supp. 3d at 288. Here, the Trustee's allegations regarding practices that are unfair or offend public policy, are immoral, unethical, oppressive, or unscrupulous, and result in substantial injury include: (1) allegations the defendants misrepresented the total closing costs, that some or all of the closing costs were not for the benefit of the Debtor, and that the Option Agreement's terms were unclear, perhaps deceptive, and do not create value for the Debtor; Compl. ¶ 30; (2) allegations that the value of the Option Agreement is illusory, causing the Debtor to lose the equity in her home for nothing of value, as detailed above and as set forth in the Complaint, Compl. ¶ 42; and (3) allegations the terms of the Lease are predatory, Compl. ¶¶ 46-49.. One or more of these practices may be immoral, unethical, oppressive, or unscrupulous, and as alleged may result in substantial injury.

From the allegations in the Complaint, it is easy to conclude the plaintiff meets her burden to plausibly allege facts supporting a claim the defendants violated CUTPA. She also sufficiently alleges facts supporting a claim for punitive damages under CUTPA because a reasonable inference may be drawn from the allegations in the Complaint that the defendants' actions were reckless, intentional, or wanton. Compl. ¶¶ 93-99, 104-111.

## V.    <u>CONCLUSION</u>

For these reasons, I conclude the Trustee sufficiently alleges facts that plausibly establish grounds for relief on her claims of fraudulent transfer pursuant to 11 U.S.C. § 548 and violations of CUTPA.

All other arguments made were considered and determined to be without merit.

The defendants' Motion to Dismiss, AP-ECF No. 8, is denied.

Dated this 10th day of June, 2024, at New Haven, Connecticut.

*Ann M. Nevins*
Chief United States Bankruptcy Judge
District of Connecticut